**7**

**WANGER JONES HELSLEY PC**
265 E. River Park Circle, Suite 310
Fresno, CA 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330

Kurt F. Vote  #160496
kvote@wjhattorneys.com
Steven K. Vote  #309152
svote@wjhattorneys.com

Attorneys for:      Creditor Sandton Credit Solutions Master Fund IV, LP

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 20-10800 |
| 4-S RANCH PARTNERS, LLC, | Chapter 11 |
| Debtor. | **DECLARATION OF ROBERT RICE IN SUPPORT OF MOTION FOR RELIEF FROM STAY** |
| EIN#       46-3161963 | |
| Address:      264 "I" Street<br>              Los Banos, CA 93635-9363 | WJH-1<br><br>**Hearing:**<br><br>Date: April 14, 2020<br>Time: 9:30 a.m.<br>Place: Courtroom 13<br>Judge: Hon. René Lastreto II |

I, Robert Rice, declare and state as follows:

1.      I am an authorized representative of Creditor Sandton Credit Solutions Master Fund IV, LP ("Sandton" or "Creditor") and am over the age of 18 years.  I have personal knowledge of the matters stated herein and if called as a witness could and would testify competently to the same. As to those matters stated upon information and belief, I am informed and believe them to be true.  I make this Declaration in support of Sandton's Motion for Relief from Stay.

2.      Each of the documents attached hereto were created in the regular course of Sandton's business at or near the time of the act, condition, or event.  I am familiar with Sandton's documents and can attest that each of the attached documents were produced from Sandton's files in this matter and are true and correct copies of the originals in Sandton's files.

3.      Sandton's primary business is investing in alternative credit opportunities, including providing rescue finance to troubled companies.  In my position with Sandton, I am familiar with Sandton's business operations, including but not limited to the loan origination process, documents related to Sandton's various loan transactions, and the collateral securing the loans made by Sandton.  I have personally been involved in private equity and distressed debt investment for 21 years.  I also have personal knowledge of the loan made by Sandton to Debtor 4-S Ranch Partners, LLC ("Debtor") that is the subject of Creditor's claim herein.

### A.      The Loan Documents.

4.      On or about August 14, 2017, Sandton made a loan (the "Loan") to Debtor in the principal amount of Thirty-Three Million Seventy-Five Thousand Eight Hundred Eighty-Seven and 92/100ths Dollars ($33,075,887.92), evidenced by a written promissory note (the "Promissory Note").  A true and correct copy of the Promissory Note is attached hereto as **Exhibit "A"**.

5.      Pursuant to the Promissory Note, the principal balance would accrue interest based on a 360-day year in two (2) ways: (1) regular interest at a rate of 7% per annum ("Cash Interest"); and (2) deferred interest, or payment-in-kind interest, at a rate of 9% per annum ("PIK Interest").  PIK Interest is the payment of interest, in lieu of a cash payment, on the outstanding

1  principal amount through principal additions, equal to the monthly rate of 9% per annum multiplied by

2  the outstanding principal balance.

3      6.    The Promissory Note provides that Debtor was to make regular monthly

4  payments of all accrued Cash Interest throughout the life of the Loan, with the balance of accrued PIK

5  Interest due and payable on the maturity date of August 14, 2019.  Alternatively, the Promissory Note

6  provides Debtor the option, for the first 12 months of the Loan, of converting the Cash Interest due to

7  PIK Interest in lieu of a monthly payment.

8      7.    Pursuant to the Promissory Note, Debtor also agreed to pay Creditor 75% of its

9  "Free Cash Flow," defined as Debtor's earnings from sales of water, crops, rents or other funds

10  produced by the real property pledged as collateral for the Loan.  In the event Debtor defaulted on this

11  debt, including by failing to make any payment or perform any obligation, the Promissory Note

12  provides that Creditor had the option of declaring all principal and accrued interest due and payable

13  immediately.  The Promissory Note also permits Creditor to recover from Debtor reasonable

14  attorneys' fees and costs expended or incurred by Creditor in connection with the enforcement of its

15  rights related to the Loan.

16      8.    Also in connection with the Loan, the parties executed a written loan agreement

17  (the "Loan Agreement"), which contains certain representations and warranties, as well as additional

18  obligations of Debtor related to the indebtedness.  A true and correct copy of the Loan Agreement is

19  attached hereto as **Exhibit "B"**.  The Loan Agreement provides that, if Debtor failed to make any

20  payment within five (5) calendar days of its due date, Creditor would assess a late charge equal to five

21  cents ($0.05) for each dollar ($1.00) of such late payment, which would be immediately due and

22  payable.  The Loan Agreement also provides that, in the event of Debtor's default, the interest rate

23  would increase by 3% per annum over the Cash Interest rate and 3% per annum over the PIK Interest

24  rate.  Pursuant to the Loan Agreement, Debtor also agreed to provide certain financial statements and

25  other financial documents, including but not limited to: an audited financial statement on an annual

26  basis; a quarterly financial statement; monthly reports regarding the amount of water sold and

27  delivered from the encumbered real property, and Debtor's tax returns.  Further, Debtor agreed to

28

maintain a trailing 12-month minimum EBITDA of $2,000,000 as of December 31, 2018 and thereafter.

9.      The Loan was also secured by a deed of trust ("Deed of Trust #1") in favor of Creditor on certain real property owned by Stephen W. Sloan, a member of Debtor, commonly known as Merced County Assessor's Parcel Numbers: 088-190-018; 090-130-028; 090-140-049; 090-140-048; and 088-180-051 (the "Hamburg Ranch").  A true and correct copy of Deed of Trust #1 is attached hereto as **Exhibit "C"**.  Mr. Sloan, along with Patti Marie Harrill-Sloan, personally guaranteed Debtor's obligations to Creditor.

10.     Debtor further secured this obligation by executing an additional deed of trust ("Deed of Trust #2") (collectively with Promissory Note, Loan Agreement, and Deed of Trust #1, the "Loan Documents") in favor of Creditor on certain real property owned by Debtor, commonly known as Merced County Assessor's Parcel Numbers: 049-200-005; 049-200-020; 049-200-022; 049-200-019; 049-200-023; 049-200-017; 049-200-021; 049-200-024; 049-220-018; 049-200-025; 049-220-019; 049-220-016; 049-220-020; 049-240-017; 065-030-004; 049-220-015; and 049-240-016 (the "4-S Property").  A true and correct copy of Deed of Trust #2 is attached hereto as **Exhibit "D"**.  Both Deed of Trust #1 and Deed of Trust #2 provide that the land pledged as security for the Loan have water rights, including the right to "receive irrigation water from such sources, in such quantities, and at such times and locations as are reasonably satisfactory for the purposes of farming in such quantities and at such times and locations as has been historically conducted" on the property.

### B.      Debtor's Default and Appraisals of Collateral.

11.     Following execution of the Loan Documents, Debtor elected to convert Cash Interest to PIK Interest in lieu of making monthly payments for the first 12 months of the Loan.  In or around August 2018, Cash Interest began to accrue at the regular rate and Debtor defaulted by failing to make regular monthly payments of all Cash Interest accrued.  On or about October 19, 2018, Creditor sent Debtor a Default Letter, a true and correct copy of which is attached hereto as **Exhibit "E"**, declaring the entire indebtedness immediately due and payable.  On or about November 15,

2018, Debtor made a one-time payment of $200,000.00, which Creditor applied to the outstanding

Cash Interest accrued at the regular and default rates but did not cure the default.

12.     Cash Interest and PIK Interest both continued to accrue on the principal balance

at the default rate.  Around this time, Debtor also defaulted on its obligations to Creditor by, in part,

failing to deliver required reports, including audited financial statements and quarterly financial

statements.  Further, Debtor failed to meet its obligations under Section 4.15 of the Loan Agreement,

which required a trailing 12-month minimum EBITDA of $2,000,000 as of December 31, 2018 and

thereafter.

13.     In light of Debtor's default, Creditor commissioned appraisals of the real

property securing the Loan in late September 2019.  Specifically, the firm of Edwards, Lien & Toso,

Inc. performed an appraisal of the Hamburg Ranch and determined that the property has a fair market

value of $12,520,000.00, as detailed in their report dated September 30, 2019.  A true and correct copy

of this appraisal report is attached hereto as **Exhibit "F"**.  This firm also performed an appraisal of the

4-S Property and determined that it has a fair market value of $14,985,000.00, as detailed in their

report dated October 24, 2019.  A true and correct copy of this appraisal report is attached hereto as

**Exhibit "G"**.  Each of these appraisals, totaling $27,505,000.00, did not account for the speculative

value of any water rights accompanying each property as detailed in Deed of Trust #1 and Deed of

Trust #2.  I am not aware of any material changes to either the Hamburg Ranch or the 4-S Property

since the appraisals were performed in late 2019.


**C.      Forbearance Agreements.**

14.     On or about May 13, 2019, Creditor and Debtor entered into a Loan

Forbearance Agreement, a true and correct copy of which is attached hereto as **Exhibit "H"**.  That

agreement was later amended and restated by virtue of the Amended and Restated Loan and

Forbearance Agreement, a true and correct copy of which is attached as **Exhibit "I"**.

15.     When Debtor failed to perform as agreed under the Loan Forbearance

Agreement and under the Amended and Restated Loan and Forbearance Agreement, Creditor

commenced non-judicial foreclosures of both Deed of Trust #1 and Deed of Trust #2.

16. On or about October 30, 2019, Creditor and Debtor, as well as Mr. Sloan and Ms. Harrill-Sloan, as guarantors, and Merced Falls Ranch, LLC ("MFR"), as an affiliate of Debtor, entered into a further forbearance agreement (the "Forbearance Agreement"). A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit "J".**

17. Pursuant to the Forbearance Agreement, Creditor agreed to forbear from exercising its rights under the Loan Documents related to the indebtedness, which totaled approximately $50,717,835.57, until December 20, 2019. In exchange for this forbearance, which included postponing the Trustee's sales of the real property securing Deed of Trust #1 and Deed of Trust #2, Debtor agreed to pay a non-refundable forbearance fee of One Million Dollars ($1,000,000.00). Debtor did not make this payment to Creditor. Further, Debtor did not perform under the Forbearance Agreement as agreed.

18. In or around December 2019, however, Debtor communicated that it would not be able to pay off the entire indebtedness by December 20, 2019, the end of the forbearance period. Accordingly, on or about December 18, 2019, the parties entered into an Amendment to Forbearance Agreement (the "Amendment"). A true and correct copy of the Amendment is attached hereto as **Exhibit "K".** Pursuant to the Amendment, Creditor agreed to further forbear from exercising its rights under the Loan Documents related to the indebtedness, which totaled approximately $53,171,128.78, until February 28, 2020. Debtor, in turn, agreed to make payments of $1,000,000.00, as a partial payment pursuant to the Loan Documents, and $1,000,000.00, as a further forbearance fee. Debtor did not make either of these payments to Creditor and did not perform as agreed in the Amendment to Forbearance Agreement.

### D. Amount Due and Owing and Recent Procedural History.

19. Prior to the commencement of this case, Creditor's foreclosure service, WT Capital Lender Services, had noticed foreclosure sales for both Deed of Trust #1 and Deed of Trust #2. Debtor commenced this case mere days before the sales were to take place. As of March 2, 2020, the date this case was commenced, Debtor owed Creditor a total of $57,264,545.53 on the Loan, including: (1) a principal balance of $47,469,035.59, including PIK Interest; (2) Cash Interest accrued

in the amount of $4,479,364.84; (3) default Cash Interest in the amount of $1,906,576.74; (4) late charges of $225,710.71; (5) attorneys' fees of $183,857.65; and (6) the forbearance fees pursuant to the Forbearance Agreement and Amendment in the amount of $3,000,000.00. On March 4, 2020, Creditor filed its Proof of Claim, which was listed as Claim 1 in Debtor's Claims Register. The first four (4) pages of Creditor's Proof of Claim, which includes a breakdown of the amount due, is attached hereto as **Exhibit "L".**

20. On March 2, 2020, Debtor filed its Petition and initiated the above-entitled bankruptcy proceeding. Mr. Sloan filed a Petition initiating a Chapter 11 bankruptcy proceeding the same day.

21. Creditor specializes, in part, in making loans to struggling business in need of capital to continue operations. Accordingly, we are familiar with both our own lending requirements and the lending requirements of conventional lenders. Reasonable lenders operating in today's environment require collateral of substantial value pledged as security and typically will not lend funds in excess of 70% of the value of the pledged collateral, with 60% loan to value ("LTV") being typical for loans secured by agricultural property. Based on the amount of the indebtedness currently owed by Debtor to Creditor, and the value of the collateral pledged, it is my opinion that a 200+% LTV loan such as this would not meet current lending standards, which makes it extremely unlikely that another lender will be able to refinance Debtor's obligations to Creditor. Further, since the real property owned by Debtor has not generated any revenue since Creditor's loan was originated in August of 2017, it is even more unlikely that a lender would be inclined to refinance Debtor's obligations to Creditor.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 10th day of March, 2020, at Los Angeles, California.


_____ /s/ Robert Rice
Robert Rice