**Number of Pages: 10**
MARSHALL C. WHITNEY #82952
JAMES A. ARDAIZ #60455
WHITNEY, THOMPSON & JEFFCOACH
Attorneys at Law
8050 N. Palm Ave., Ste. 110
Fresno, CA 93711
Telephone: (559) 753-2550
Facsimile (559) 795-2560
E-Mail: mwhitney@wtjlaw.com

DARRYL J. HOROWITT #100898
THOMAS H. ARMSTRONG #146016
COLEMAN & HOROWITT, LLP
Attorneys at Law
499 West Shaw, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Facsimile: (559) 248-4830
E-mail: tarmstrong@ch-law.com

Attorneys for: Intervener: STEVE SMITH
and, SHS FAMILY LIMITED PARTNERSHIP

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>4-S RANCH PARTNERS, LLC.,<br><br>Debtor. | Case No. 20-10800-B-11<br><br>DCN: WJH-1 |
| In re:<br><br>STEPHEN WILLIAM SLOAN<br><br>Debtor. | Case No. 20-10809-B-11<br><br>DCN: WJH-2<br><br>**MOTION OF STEPHEN SMITH AND SHS FAMILY LIMITED PARTNERSHIP TO INTERVENE AND/OR JOINDER IN CONTESTED MATTER PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE RULES 2018(a), 4001, 9014(c), 7019, 7020(b), 7021, AND 7024** |

Proposed intervening parties, Stephen Smith and SHS Family Limited Partnership (collectively "Smith"), respectfully represent and move this Court as follows:

1. 4-S Ranch Partners, LLC ("4-S") and Stephen William Sloan ("Sloan") and collectively the "Debtors", filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code ("Code") on March 2, 2020, respectively bearing case numbers 20-10800 and 20-10809. The cases were filed to stay a pending foreclosure against Debtors' real properties, and their vitally important and valuable Water Rights.

## JURISDICTION

2. Jurisdiction exists under 28 U.S.C. §1334. Venue is proper under 28 U.S.C. §1408. The District Court for the Eastern District of California has generally referred these matters to the Bankruptcy court for hearing pursuant to 28 U.S.C. §157(a) and Eastern District of California District Court General Orders 182 & 223. See also L.B.R. 1002-1. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A),(B),(G) and (O). This is a contested matter under Fed. R. Bankr. P. Rule 9014. This Motion is made pursuant to Fed R. Bankr. P. Rules 2018(a), 4001, 9014(c), 7019, 7020(b), 7021, and 7024, and 11 U.S.C. §1109(b).

## FACTS

3. On March 16, 2020, creditor Sandton Credit Solutions Master Fund IV, LP ("SCS") filed its motions for stay relief in both cases (bearing DC# WJH-1 in 4-S, and DC# WJH-2 in Sloan). The matters were set for hearing on April 14, 2020. By Order entered April 14, 2020, both contested matters were continued to May 27, 2020. On April 22, 2020, a Stipulation For Consolidation of Discovery and Hearing Purposes and for Issuance of Scheduling Order By Court (the "Stipulation") was filed by the Debtors and SCS. The contested matters were ordered consolidated by a Scheduling Order and Order Consolidating Contested Matters entered April 24, 2020 (the "Scheduling Order"). The Court determined that a triable issue of material fact existed and ordered an evidentiary hearing to begin September 17, 2020, and continue to September 18, 2020, if necessary. **The evidentiary issue for determination under the stay relief motions is the valuation of the real properties, which necessarily includes, <u>or should include</u>, the Water**

**Rights and their value. Amazingly, SCS ascribes no value to the Water Rights as to the real properties.** See page 11:2-3 of SCS's Motion at Docket 21, in the 4-S case.

4. Smith believes that Debtors have complied with their duties under the Code since the commencement of the cases. 4-S's initial Disclosure Statement has been approved. Smith understands that 4-S needs to amend its Disclosure Statement due to a certain material change with respect to a creditor which is not at issue here. Sloan's Disclosure Statement has yet to be filed.

5. **At issue for Smith are its Water Rights.** Debtors also possess significant Water Rights. As will be discussed below, Debtors' Water Rights represent the most significant value and part of SCS's collateral for its loan to Debtors. Collectively, Smith and Debtors have banked approximately 600,000 acre feet of stored water that has inured to their respective benefits due to San Joaquin River water overflows on each of their real properties. The water is banked by its percolation into the ground on the properties and is able to be extracted at rates approved by the State of California. **The value of Smith's Water Rights, which include approximate 60,000 acre feet of Smith's stored water, approximates at least $30,000,000.00.** Smith must intervene in the consolidated contested matters to protect Smith's interests in its Water Rights and stored water.

6. For the Court's edification, Smith owns real property adjacent to Debtors' real properties. Stephen Smith and Stephen Sloan are both in their mid-60s and have been life-long friends since childhood. Smith has historically sold certain amounts of stored water and utilized passage of these waters over and through Debtors' properties to effectuate their sales. Stephen Smith and Stephen Sloan have a long-standing agreement that Smith may transfer his water across and through Debtors' real properties without cost. A reciprocal agreement exists for Sloan. There exists no easement, covenant or other legal agreement other than the arrangement these two (2) life-long friends have between themselves for the transfer of Smith's water upon sale. They utilize water transfer systems that were constructed in the late 1950's and early 1960's by the United States Army Corps of Engineers to effectuate these transfers. Thus, it is vitally necessary that Smith be able to preserve this method of transfer and be allowed to protect its interest as contemplated under the Federal Rules of Bankruptcy Procedure adopting the Federal Rules of

Civil Procedure to insure and protect Smith's ability to transfer its banked water and reap the benefits of its sale. SCS refers to the act of selling water rights as the ability to "monetize" the Water Rights.

## THE LAW

7. Stay relief motions are contested matters that must be made in accordance with Fed. R. Bankr. P. Rule 9014. Please see Fed. R. Bankr. P. Rule 4001(a) (1). Procedurally, Fed. R. Bankr. P. Rule 9014(c) provides as follows:

> "(c) Application of Part VII Rules. Except as otherwise provided in this rule, **and unless the court directs otherwise**, the following rules shall apply: 7009, 7017, 7021- 7025, 7026, 7028-7037, 7041, 7042, 7052, 7054-7056, 7064, 7069, and 7071. The following subdivisions of Fed. R. Civ. P. 26, as incorporated by Rule 26, shall not apply in a contested matter **unless the courts directs otherwise**: 26(a)(1) (mandatory disclosure), 26(a)(2) (disclosures regarding expert testimony), and rule 26(a)(3) (additional pre-trial disclosures), and 26(f) mandatory meeting before scheduling conference/discovery plan). An entity that desires to perpetuate testimony may proceed in the same manner as provide in Rule 7027 for the taking of a deposition before an adversary proceeding. **The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply**. The court shall give the parties notice of any order issued under this paragraph to afford them a reasonable opportunity to comply with the procedures prescribed by the order."

8. The Court has already invoked certain rules under Rule 26 in the Scheduling Order entered April 24, 2020. At page 4: 3 – 5 of the Scheduling Order, the Court made Rule 26(a)(1)(A) applicable to these consolidated contested matters.

9. Further, the Court's Scheduling Order invoked Rule 26(a)(2) of the rules by ordering the disclosure of experts by July 1, 2020. Further, other pre-trial disclosures as contemplated under Rule 26(a) (3) regarding witnesses was implemented.

## INTERVENTION OF RIGHT

10. Smith respectfully moves this Court for an order allowing Smith to intervene pursuant to Fed. R. Bankr. P. Rule 7024 and Fed. R. Civ. P. Rule 24 (a) (2). Rule 24 provides that the court **must permit** anyone to intervene who:

> "(2) claims an interest relating to the property or transaction that is the subject of the action, **and is so situated that disposing of the action may as a practical matter impair or impede the movant's**

**ability to protect its interest**, unless existing parties adequately represent that interest."

11. Smith is entitled to Intervention of Right as contemplated under Rule 24(a) (2) due to the nature of its interest in its Water Rights and Smith's ability to continue to utilize the methods of transport that it has historically utilized to transfer Smith's stored water through the levies, canals, aqueducts that were constructed by the United States Army Corps of Engineers nearly 70 years ago. Waters have been transferred via these methods for years and disallowing intervention as of a matter of right will impair Smith's ability to protect its interest as contemplated under Rule 24(a) (2). Neither Debtors nor SCS can, or will, adequately represent Smith's interest in its Water Rights.

## PERMISSIVE INTERVENTION

12. Alternatively, Smith is also entitled to Permissive Intervention under Rule 24(b) (1)(B) and Rule 24(b)(3) and Fed. R. Bankr. P. Rule 2018(a). First, under Rule 24(b)(1)(B), Smith's claim to a portion of the banked over flow water that approximates 60,000 acre feet of the approximately 600,000 total acre feet is water available to Smith to use or monetize. In order to monetize that stored water, the stored water extracted for Smith must be conveyed to the Eastside Bypass, which requires utilizing the levies, canals, aqueducts, and other conveyance systems located on the 4-S Ranch as explained above and more fully explained in the Bruce Marlow declaration. In short, the conveyance infrastructure on the 4-S Ranch and its historical use is critical to Smith's ability to convey Smith's banked water. Smith's inability to utilize the 4-S Ranch infrastructure will cause Smith substantial financial loss. It is important to note the water from Smith's ranch that is transferred to the Eastside Bypass is quantified and calculated by the landowner and amount of water diverted and reported to the State of California. Essentially, the over flow water banked is calculated by the State of California and the extraction of water out which is reported by the landowners to the State of California is deducted to determine the remaining amount of acre feet of stored water each landowner owns. Thus, Smith's interest or claim in the banked water is inextricably intertwined with Debtors' Water Rights and water conveyance system on the 4-S Ranch. To not allow Smith to protect this interest is contrary to the mandate of Rule 24(b) (1)(B) as Smith's interest or claim shares common questions of law and

fact.

13. Under Rule 24(b) (3), the Court in exercising its discretion, must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. Certainly, there can be no prejudice to the Debtors. Debtors are attempting to reorganize their financial affairs, and their real properties with attendant Water Rights are central to that effort. In fact, Debtors likely will support permissive intervention.

14. As to undue delay or prejudice to SCS, interest under its note accrues at a rate in excess of $26,000 per day. **SCS has known since the inception of its loan that the Water Rights, and in particular the stored water, have tremendous value. SCS is, for all intent and purposes, attempting to make a "_money grab_" on these valuable Water Rights to the detriment of creditors of the estate and Debtors. This is precisely why SCS made its $33,075,887.92 hard money loan to Debtors. SCS would not loan this amount if the only security for its loan was merely grazing ground as SCS now claims.** Page 12 of the Loan Agreement which is Exhibit "A" to SCS's POC # "1", provides a limitation on the Transfer of Water Rights (which includes stored water) absent the prior written consent of SCS which shall not be unreasonably withheld. Please see Request For Judicial Notice, Exhibit "A", Page 12. **Property (SCS's collateral) is also specifically defined to include "Water Rights".** Please see Request for Judicial Notice, Exhibit "B", Page 2 of 16, SCS's Deed of Trust, Security Agreement and Fixture Filing recorded with the Merced County Recorder on August 16, 2017. **Importantly, the lengthy definition of Water Rights is specifically defined as "… all water (including any water inventory in storage) … surface water … " and "… stored water…".** Please see Request for Judicial Notice, Exhibit "B", Page 4 of 16.

15. Although Debtors scheduled their Water Rights as having a value of $400/acre foot, the Water Rights have a value of at least $500/acre foot. Please see the accompanying Smith and Barlow declarations. A simple mathematical calculation provides that if the value is $500/acre foot and Debtors hold 540,000 acre feet of stored water, then the value of Debtors' stored water alone equals $270,000,000.00 which provides an equity cushion that more than adequately protects SCS as contemplated under 11 U.S.C. §361. Please see In Re Mellor, 734 F.2d 1396 (9th Cir.

6
MOTION TO INTERVENE

1984). **SCS fails to carry its only burden of proof under 11 U.S.C. §362(g) (1).** As to Smith, in jeopardy is its 60,000/acre feet of stored water (which is part of Smith's Water Rights) with a value at $500/acre foot which equals $30,000,000.00, **and most importantly, its continued ability to sell and transfer its banked water as it has historically done through the system of the levies, canals, and aqueducts referred to above.**

16. At page 4:22-23 of the WJH-1 Motion in the 4-S case, **SCS affirmatively states that "the land pledged as security for the Loan <u>have water rights</u>…"** As stated above in ¶ 14 above, **Water Rights** are defined at Page 4 of 16, of the Deed of Trust, Security Agreement and Fixture Filing recorded with the Merced County Recorder on August 16, 2017 **to specifically include "… all water (including any water inventory in storage) … surface water … " and "… stored water…".** It is disingenuous for SCS to now assert that the Water Rights have only "speculative" value when in fact it can only be these Water Rights that SCS considered as valuable when it made its $33,075,887.92 loan to Debtors. SCS's judicially admits [See Fed. R. Evid. Rule 801(d)(2)] at page 11: 2-4 of the WJH-1 Motion in the 4-S case, and in the Rice Declaration at ¶ 13, **that the appraisals commissioned do not ascribe any value to these Water Rights** and only values its collateral at $27,505,000.00. Smith and the Debtor can and will demonstrate that significant value must be ascribed to the Water Rights to make SCS's commissioned appraisals relevant for consideration on the issue of value. Smith objects to the relevancy of these appraisals. Smith certainly knows the value of his Water Rights and stored water. One must ask the only reasonable question, why would SCS otherwise lend $33,075,887.92 on mere grazing ground? It did not. In fact, SCS has other collateral with significant value in the Sloan case. The real value of SCS's collateral that it seeks to foreclose is, and always has been, the Water Rights. SCS is a savvy hard money lender looking for a windfall at the Debtors' and their creditors expense, and to the detriment of Smith. Without Debtors' permission to market and sell Smith's water through the use of the water transfer system mentioned above, Smith's interest will be irreparably impaired and there is no other way for Smith to protect that interest absent intervention.

17. Fed. R. Bankr. P. Rule 2018(a) provides that for cause shown, the Court may permit any interested entity to intervene generally or with regard to any specified matter. <u>In Re John</u>

Torrez, Jr. and Jessie Torrez, 132 B.R. 924, 1991 Bankr. LEXIS 1492 **32-33 (E.D. Cal. 1991). A party in interest is expansively interpreted to insure that all parties that may be significantly impacted have an adequate opportunity in Chapter 11 cases to be heard. Ibid at **24 – 33 discussing 11 U.S.C. §1109(b) and Fed. R. Bankr. P. Rule 2018(a).

## SMITH IS AN INDISPENSIBLE PARTY

18. Smith is also an indispensable party as contemplated under Fed. R. Bankr. P. Rule 7019 and Fed. R. Civ. P. Rule 19. Specifically, Rule 19(a)(1)(B) provides that a person who is subject to service of process and whose joinder will not divest the court of jurisdiction, ***must be joined as a party*** if: that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence **may** (i) as a practical matter impair or impede the person's ability to protect the interest.

19. In this contested matter, Smith is certainly subject to service of process. That requirement is met.

20. As to the second prong, joinder of Smith will not divest this Court of jurisdiction and Smith consents to this Court's jurisdiction. Therefore, the remaining inquiry is whether there is potential impairment or an impediment of Smith's ability to protect its interest in its Water Rights and stored water? Smith asserts in the affirmative that this is exactly why intervention is required and why Smith is an indispensable party.

21. The Ninth Circuit in White v. University of California, 765 F.3d 1010, 1026-1027 (9th Cir. 2014) examined the two-pronged inquiry for determining whether a party is "necessary". Following its prior decision in Confederated Tribes of Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1498 (9th Cir. 1991), the Ninth Circuit held that the court **must first determine** whether complete relief can be afforded if the action is limited to the existing parties. The court must also determine if the party seeking to be joined has a "legally protected interest" in the subject of the action, and, if so, whether in the party's absence will "impair or impede" the party's ability to protect that interest. **Importantly, the Ninth Circuit held, that if either of those questions is answered in the affirmative, the party must be joined.** Citing Fed. R. Civ. P. Rule 19(a)(1). Notably, the Ninth Circuit continued that, "Indeed, the language of the

rule contemplates that **a party need only have a 'claim' to an interest.**" Citing Fed. R. Civ. P. Rule 19(a) (2). **Rule 19 is designed to protect a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of that party.** Citing <u>Shermoen v. United States</u>, 982 F.2d 1312, 1317 (9th Cir. 1992). See also <u>In Re John Torrez, Jr. and Jessie Torrez</u>, <u>supra</u>; 11 U.S.C. §1109(b); and Fed. R. Bankr. P. Rule 2018(a).

22. The Fourth Circuit addressed Rule 19(a)(1)(B) in <u>Home Buyers Warranty Corp. v. Hanna</u>, 750 F.3d 427, 433-434 (4th Cir. 2014). In that case, following the reasoning of the Supreme Court in <u>Provident Tradesman Bank & Trust v. Patterson</u>, 390 U.S. 102, 119 n. 16, 88 S.Ct. 733, 19 L.Ed2d 936 (1968) the Fourth Circuit ruled as has the Ninth Circuit in the cases above. However, the Fourth Circuit importantly noted and held that the decisions under Rule 19 must be made **pragmatically** and not strictly as a procedural formula. Therefore, that requires the Court to review the practical affect of not allowing Smith to intervene and be named as an indispensable party under Rule 19 to protect its Water Rights, stored water, and method of transfer. As the Fourth Circuit held, courts must look to and take into account all "possible prejudice to all parties, ***including those not before it***." The prejudice to Smith here is the inability to facilitate the transfer of its stored water under Smith's long-standing arrangement with Sloan to utilize the levies, canals and aqueducts on the 4-S property.

### FEDERAL RULES OF BANKRUPTCY PROCEDURE RULE 7021

23. Fed. R. Bankr. P. rule 7021 in pertinent part provides as follows: " On motion or on its own, the court any at any time, on just terms, add or drop a party."

24. Smith is an indispensable party as stated above entitled to intervention as of right and thus the Court should add Smith as a party to this contested matter.

### CONCLUSION

For the reasons and facts stated above, Smith respectfully prays that this Court determine intervention is appropriate under Fed. R. Bankr. P. Rules 4001, 9014(c), and 7024 and that the joinder of Smith pursuant to Fed. R. Bankr. P. Rules 7019, 7020, and 7021 is required to allow Smith to protect its interests.

Smith also prays that to afford all parties appropriate relief, that this contested matter be further continued so as to allow all parties the opportunity to conduct discovery as appropriate, that this Court make such further orders as are necessary to protect the interests of all parties currently involved and those of Smith, and for such further relief as this Court deems appropriate.

Respectfully submitted,

DATED: September 8, 2020                COLEMAN & HOROWITT, LLP


By: */s/ Thomas H. Armstrong*
    THOMAS H. ARMSTRONG
    Attorneys for Intervener, STEVEN SMITH
    and SHS FAMILY LIMITED
    PARTNERSHIP