**POSTED ON THE WEBSITE**
**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>**4-S RANCH PARTNERS, LLC**,<br><br>              Debtor.<br>_____<br>In re<br><br>**STEPHEN WILLIAM SLOAN,**<br><br>              Debtor.<br>_____ | Case No. 20-10800-B-11<br><br>DCN: WJH-3<br><br><br><br><br><br>Date: September 10, 2020<br>Time: 1:30 p.m.<br>Department B, Judge Lastreto<br>Fifth Floor, Courtroom 13<br>2500 Tulare Street, Fresno, CA |

**RULING AFTER *IN CAMERA* REVIEW**

**INTRODUCTION**

Invoking the attorney-client privilege and work-product protection, a law firm resisted producing certain documents requested in a subpoena served by a creditor. The subpoena is part of discovery concerning a pending stay relief motion involving the creditor. After producing a Privilege Log, the law firm and the creditor reached an impasse on the appropriate extent of the documents protected. The creditor filed a motion to compel and the court issued an order including a provision requiring *in camera* review of those documents that remain in dispute. After that review, the court issues this ruling requiring production of certain documents and withholding of others.

1

## **BACKGROUND**

About seven months ago, 4-S Ranch Partners and Stephen Sloan (collectively "4-S") filed voluntary chapter 11 cases. These debtors are seeking to reorganize large farming enterprises in a unique way. Rather than "farming their way out of it," these entities seek to continue their pre-petition efforts to capitalize on California's recently enacted groundwater management laws and become approved underground water storage providers. They also plan to sell water and divert it to other users. The future may be lucrative or not. The outcome largely depends on receipt of regulatory approvals and the legal establishment of entities authorized to store and divert water.

4-S's primary secured lender is Sandton Credit Solutions Master Fund IV, LP ("Sandton"). Sandton is owed over Fifty-Seven Million Dollars. The debt is secured by many parcels of real estate in Merced County. Pre-petition, Sandton negotiated with 4-S and entered into a few forbearance agreements. They were not performed. Foreclosure proceeded until the bankruptcies were filed.

Sandton promptly filed stay relief motions in these cases asserting § 362 (d)(2) supports the relief they request. Sandton contends their collateral is not protected by equity and is not necessary for a prospective reorganization within a reasonable time. 4-S disputes this claiming that Sandton's collateral is worth far more than Sandton alleges because 4-S is on the threshold of the necessary approvals to become an

underground water storage provider.[1]  4-S also contends the collateral is critical for their proposed reorganization.

　　　At the hearing on Sandton's motions in April 2020, the parties and the court noted there were issues of material fact requiring an evidentiary hearing.  The parties agreed on a schedule for the evidentiary hearing.  The court consolidated the motions in these two cases for purposes of discovery and the evidentiary hearing. Discovery began.

　　　Among the issues involved is the status of 4-S's efforts to obtain necessary legal clearances and establishing necessary entities for the water storage/diversion proposals and the likelihood of that happening reasonably soon.  This issue may be critical to the §362 (d) (2) inquiry on these motions.  So, Sandton subpoenaed records from a law firm assisting 4-S with the numerous land use issues it faced.  The law firm, O'Laughlin & Paris, LLP, and two of its lawyers, Valerie Kincaid, Esq., and Sarah Glatt, Esq., primarily communicated with 4-S's consultant, Bruce Marlow ("Marlow"), on the land use issues pre-petition.[2]

　　　The law firm through Ms. Kincaid (collectively "Kincaid") responded and included a privilege log identifying 229 documents withheld from production on attorney client privilege and work product protection grounds.  From June 2020 through August 2020, Sandton's and 4-S's counsel conferred about the documents withheld.[3]  In the absence of what Sandton considered a

---

[1] Sandton claims the collateral is worth about $15 million.
[2] So far, neither Ms. Kincaid, Ms. Glatt nor the O'Laughlin & Paris law firm has been employed by either debtor to continue assisting on the land use issues.
[3] Though not at issue now, Sandton contends its early overtures to "meet and confer" were either ignored or unreasonably postponed by the debtors. The debtors disagree citing many reasons including the volume of documents

satisfactory resolution and with a looming trial date, Sandton brought this motion to compel.[4]

After the hearing on the motion, the court issued an order on September 14, 2020 (Doc. 234). As pertinent here, the order provided:

- the parties were to meet and confer and determine which documents truly remain in dispute as privileged or protected;
- the privilege log and copies of the documents in dispute were to be delivered to the court for *in camera* review;
- Sandton was permitted to provide a small exemplar of produced documents to assist the court in determining if any privilege or protection had been waived.
- Kincaid had concluded representation of debtors and any order requiring production of withheld documents would be directed to 4-S since it was provided all the disputed documents.

Through the parties' efforts, the 229 documents have been winnowed down to eight. The documents have been produced to the court. The court has reviewed the documents and the exemplars.

**PARTIES' CONTENTIONS**

4-S contends the withheld documents are either privileged attorney-client communications or protected by the work product privilege. Most of the documents are emails between Kincaid or Glatt and Marlow. Marlow is a "de facto" high level employee of

---

and difficulty in contacting their client so decisions could be made as reasons for delays.

[4] Before the hearing on the motion, the parties had reduced the number of documents subject to dispute substantially.

4

these debtors and so communications with he and counsel for the debtors should be protected.

Sandton originally contended Marlow was an independent consultant and a recipient of attorney-client communications, which was consistent with debtor's actions. At the hearing on the motion, debtors took the position Marlow was a "de facto" high level employee. Now, Sandton contends even so, the debtors have waived the attorney-client privilege, or any protection given the breadth of documents already produced.

**JURISDICTION**

The District Court has jurisdiction of this contested matter under 28 U.S.C. § 1334 (b) since this is a civil proceeding arising under title 11 of the United States Code. The District Court referred this matter to this court under 28 U.S.C. § 157 (a). This court has authority to enter a final decision on this motion and the underlying relief from stay motion under 28 U.S.C. § 157 (b) (2) (G). The Federal Discovery Rules largely apply to contested matters under Fed. R. Bankr. Proc. 9014 (c).

**ANALYSIS**

1. Application of Attorney-Client Privilege

Questions of evidentiary privilege arising in the course of the adjudication of federal rights is governed by principles of federal common law. U.S. v. Zolin, 491 U.S. 554, 562 (1989). Since privileges impede the discovery of truth, they are strictly construed. Branch v. Umphenour, 936 F. 3d 994, 1006

(9th Cir. 2019). Stay relief litigation is uniquely a federal issue, so federal common law concerning the attorney client privilege applies.

    A party asserting the privilege has the burden of proof of each element of the privilege. <u>U.S. v. Ruehle</u>, 583 F. 3d 600, 607 (9th Cir. 2009). There are eight elements:

1) Legal advice must be sought.
2) Advice sought must be from a professional legal advisor in the advisor's capacity as such.
3) The communication must be related to that purpose.
4) The advice or communication must be given in confidence.
5) The client must have wanted the communication in confidence.
6) At the client's insistence, the communication is permanently protected.
7) The client and the legal advisor may not disclose the communication.
8) The exception is if the protection is waived. <u>U.S. v. Landorf</u>, 591 F. 2d 36, 38 (9th Cir. 1978); <u>U.S. v. Graf</u>, 610 F. 3d 1148, 1156 (9th Cir. 2010).

    There is no real dispute here that the documents subject to *in camera* review are arguably privileged. Rather, Sandton contends that despite the privilege, the documents withheld should be disclosed because the documents already produced essentially waive the privilege. Fed. R. Evid. 502 (a) addresses waiver of the attorney-client privilege or work-product protection as to undisclosed communications or information when other privileged documents or information have

been produced. The waiver extends to undisclosed communication or information only if:

- The waiver is intentional;
- The disclosed and undisclosed communications or information concern the same subject matter; and
- They ought in fairness to be considered together. Fed. R. Evid. 502 (a).

Subject matter waiver is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation to the disadvantage of the adversary. Fed. R. Evid. 502 (a) advisory committee's note.

These elements of subject matter waiver are applicable to both the privilege and the procedural protection afforded work-product. Work-product protection is examined next.

2. Application of work-product protection.

The procedural immunity of the work product doctrine is not a privilege. So, the scope of the work-product doctrine is determined by federal law even if the federal court must apply state substantive law. Holliday v. Extex, 447 F. Supp. 2d 1138 (D. Haw. 2006) citing Baker v. General Motors Corp., 209 F. 3d 1051, 1053 (8th Cir. 2000). There is very little or no protection surrounding work product dealing with an expert who will testify. See, Fed. R. Civ. Proc 26 (a) (2); (b) (4) (A). Marlow is slated to testify at the trial of the stay relief motion. He is a consultant but also a "de facto" employee of the debtors. Thus, the court looks at work-product protection

claims dealing with documents related to subjects Marlow will testify about with a "gimlet eye."

Some documents may have been prepared by Marlow or counsel for a business purpose unrelated to litigation. Others may have a dual purpose-both business and litigation relevance. In the ninth circuit, those documents must be carefully considered. The court should consider facts surrounding the creation of the documents. If their litigation purpose "so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole," the documents can be within the ambit of work product. <u>U.S. v. Torf (In re Grand Jury Subpoena)</u>, 357 F. 3d 900, 910 (9th Cir. 2003).
The court now turns to the remaining eight documents described in the privilege log which are in dispute.

3. <u>Rulings on document production</u>

The following rulings on the disclosure of disputed documents will follow the numbers set forth in the privilege log.

**#40 – Documents should be produced.**

The documents do not contain a legal analysis or discussion. They do represent a list of tasks, but the list does not reflect legal opinions or analysis. The documents also cover the same subjects as the exemplars, and it is fair to review these together with the documents produced.

**#41 – Documents should be produced.**

Same as #40 above.

**#53 – Documents to remain privileged.**

These documents contain discussions of matters to be analyzed or considered in the future. The documents also include a strategic discussion concerning timing of submissions to various agencies. These documents also contain information that is not the same subject matter as those documents already produced. The documents reflect counsel's opinions and considerations.

**#56 – Documents to remain privileged.**

Same as # 53 above.

**#62 – Documents to remain privileged except pages 3-8, which are public records. Those pages (3-8) should be produced.**

It is not fair to consider these documents together with those already produced. These documents cover other topics besides the Owens Creek diversions. They also contain attorney opinions and conclusions.

**#98 – Documents to remain privileged.**

These documents reflect strategic discussions concerning the content and form of a LAFCO application. They are legal opinions and conclusions, which have an expectation of being privileged. The court has reviewed the exemplars which include an interlineated copy of a LAFCO application. But production of that document does not "open up" all discussions concerning the LAFCO application.

**#135 – Documents should be produced.**

This is a checklist of actions Mr. Marlow is to take. It is a data checklist without any legal analysis. The communication only contains information. It is not protected by

work product because the subjects covered in this document are included in the documents already produced.

**#136 – Documents should be produced.**

Same as # 135 above.

## CONCLUSION

For the foregoing reasons, the listed documents should be produced or withheld as stated.  The court will issue a contemporaneous order.

Dated: Sep 30, 2020

By the Court

René Lastreto II, Judge
United States Bankruptcy Court

10

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked __X__, via the U.S. mail.

4-S Ranch Partners, LLC
264 I Street
Los Banos CA 93635-9363

Stephen William Sloan
317 Kingsbury
Aptos CA 95003

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721

Alexander K. Lee
221 Sansome Street, Third Floor
San Francisco CA 94104

Kurt F. Vote
265 E. River Park Circle, Suite 310
Fresno CA 93720

Peter L. Fear
7650 N. Palm Ave., Suite 101
Fresno CA 93711

Valerie Kincaid
2617 K Street, Suite 101
Sacramento, CA 95816