**18**

**WANGER JONES HELSLEY PC**
265 E. River Park Circle, Suite 310
Fresno, CA 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330

Kurt F. Vote #160496
kvote@wjhattorneys.com
Steven K. Vote #309152
svote@wjhattorneys.com

Attorneys for:    Creditor Sandton Credit Solutions Master Fund IV, LP

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 20-10800-B-11 |
| 4-S RANCH PARTNERS, LLC, | Chapter 11 |
| Debtor. | DCN: Document No. 1 |
| EIN#    46-3161963 | **CREDITOR'S STATUS CONFERENCE REPORT** |
| Address:    264 "I" Street    Los Banos, CA 93635-9363 | Status Conference: |
| | Date:    April 27, 2021 |
| | Time:    9:30 a.m. |
| | Place:    2500 Tulare Street, 5th Floor    Courtroom 13    Fresno, CA 93721 |
| | Judge:  Hon. René Lastreto II |

Creditor Sandton Credit Solutions Master Fund IV, LP ("Sandton" or "Creditor")

submits the following Status Conference Report to the Court in advance of the Status Conference in this

matter scheduled for April 27, 2021 at 9:30 a.m.

On December 9, 2020, the Court entered an Order approving the Stipulation Regarding

Motions for Relief from Automatic Stay in this matter (Dkt. 346.)  Therein, Sandton and Debtor in

Possession and Debtor 4-S Ranch Partners, LLC ("Debtor") agreed that if Sandton was not paid all sums

1  due to it by March 31, 2021, Sandton would receive relief from the automatic stay to pursue its state law

2  remedies to obtain title to and possession of the 4-S Ranch property effective April 1, 2021. Debtor did

3  not make payment in any amount to Sandton by March 31, 2021 and the portion of the Order granting

4  Sandton relief from stay took effect April 1, 2021.

5         The Trustee on the Deed of Trust in favor of Sandton on the 4-S Ranch has prepared a

6  new Notice of Sale to schedule a non-judicial foreclosure on the Deed of Trust, a true and correct copy

7  of which is attached hereto as Exhibit "A". The foreclosure sale for the 4-S Ranch Deed of Trust is

8  scheduled for April 29, 2021.

9         Sandton has also secured from the Merced Superior Court an Order appointing David

10  Stapleton of The Stapleton Group as a Receiver over the 4-S Ranch property. A true and correct copy

11  of the April 5, 2021 Order appointing the Receiver is attached hereto as Exhibit "B".

12

13  Dated: April 5, 2021                    Respectfully submitted,

14                                   WANGER JONES HELSLEY PC

15

16                                _____/s/ Kurt F. Vote_____
                                     Kurt F. Vote
17                                   Steven K. Vote
                                     Attorneys for Creditor
18                                   Sandton Credit Solutions
                                     Master Fund IV, LP
19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

RECORDING REQUESTED BY:


<u>AND WHEN RECORDED MAIL TO:</u>
**WT Capital Lender Services, a California corporation**
**7522 North Colonial Avenue, Suite 101**
**Fresno, California 93711**

---

<div align="right">SPACE ABOVE THIS LINE FOR RECORDER'S USE</div>

T.S. No.: **19-13632-01**
Loan No.: **\*\***

# NOTICE OF TRUSTEE'S SALE

**DEED OF TRUST, SECURITY AGREEMENT, AND FIXTURE FILING WITH ASSIGNMENT OF RENTS**
**AND PROCEEDS, LEASES AND AGREEMENTS**
**(hereinafter referred to as 'Deed of Trust')**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 8/14/2017.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Original Trustor(s): **4-S Ranch Partners, LLC, a Delaware limited liability company**
Duly Appointed Trustee: **WT Capital Lender Services, a California Corporation**
Recorded **8/16/2017, as Instrument No. 2017026266** of Official Records in the office of the Recorder of **Merced** County, California
Date of Sale:  **4/29/2021 at 12:30 PM**
　Place of Sale:　　**AT THE WEST ENTRANCE TO THE MERCED COUNTY COURTS**
　　　　　　　　　**BUILDING, 627 21st STREET, MERCED, CALIFORNIA**
Amount of unpaid balance and other charges:  **$70,013,706.34** Estimated

T.S. No.: **19-13632-01**
Loan No.: **\*\***

## NOTICE OF TRUSTEE'S SALE

Street Address or other common designation of real property: Directions to said property may be obtained by submitting a written request within ten (10) business days of the first publication to: Sandton Credit Solutions Master Fund IV, LP, c/o WT Capital, 7522 North Colonial Avenue, Suite 101, Fresno, CA 93711

Legal Description:
**TRACT ONE:**
**PARCEL 1: (APN'S: 049-200-005 AND 049-200-020)**
**THAT CERTAIN REAL PROPERTY, BEING THOSE PORTIONS OF SECTIONS 2, 11 AND 12 IN TOWNSHIP 8 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, LYING NORTHERLY OF THE CENTERLINE OF "BEAR CREEK" AND SOUTHWEST OF THE OF THE CENTERLINE OF A CANAL NOW KNOWN AS THE "EASTSIDE CANAL".**
**THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED MAY 21, 2007, AS INSTRUMENT NO. 2007-29948 OF OFFICIAL RECORDS.**
**PARCEL 2: (APN: 049-200-022)**
**THE EAST HALF OF SECTION 11, TOWNSHIP 8 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, LYING SOUTH OF THE CENTERLINE OF "BEAR CREEK".**
**THIS LEGAL DESCRIPTION S MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED MAY 21, 2007, AS INSTRUMENT NO. 2007-29948 OF OFFICIAL RECORDS.**
**PARCEL 3: (APN'S: 049-200-019 AND 049-200-023)**
**THE WEST HALF OF SECTION 11, TOWNSHIP 8 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, LYING SOUTH OF THE CENTERLINE OF "BEAR CREEK".**
**THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED MAY 21, 2007, AS INSTRUMENT NO. 2007-29948 OF OFFICIAL RECORDS.**
**PARCEL 4: (APN: 049-220-017)**
**THE EAST 2,562.34 FEET OF SECTION 14, TOWNSHIP 8 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, MERCED COUNTY, CALIFORNIA, THAT LIES NORTHEAST OF THE CENTERLINE OF THE "EASTSIDE BYPASS".**
**THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED MAY 21, 2007, AS INSTRUMENT NO. 2007-29948 AND NOVEMBER 19, 2007, AS INSTRUMENT NO. 2007-62107 OF OFFICIAL RECORDS.**
**PARCEL 5: (APN'S: 049-200-021, 049-200-024 AND 049-220-018)**
**THE WEST HALF OF SECTION 13 AND THAT PORTION OF THE WEST HALF OF SECTION 12 THAT LIES SOUTH OF THE CENTERLINE OF "BEAR CREEK" AND SOUTHWEST OF THE SOUTHWEST LINE OF THE "EASTSIDE CANAL", TOWNSHIP 8 SOUTH RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, MERCED COUNTY, CALIFORNIA.**

T.S. No.: **19-13632-01**
Loan No.: **\*\***

## NOTICE OF TRUSTEE'S SALE

THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED MAY 21, 2007, AS INSTRUMENT NO. 2007-29948 AND NOVEMBER 19, 2007, AS INSTRUMENT NO. 2007-62107 OF OFFICIAL RECORDS.
PARCEL 6: (APN'S: 049-200-025 AND 049-220-019)
THE EAST HALF OF SECTION 13 AND THAT PORTION OF THE EAST HALF OF SECTION 12 THAT LIES SOUTHWEST OF THE SOUTHWEST LINE OF THE "EASTSIDE CANAL", TOWNSHIP 8 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, MERCED COUNTY, CALIFORNIA.
THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED MAY 21, 2007, AS INSTRUMENT NO. 2007-29948 AND NOVEMBER 19, 2007, AS INSTRUMENT NO. 2007-62107 OF OFFICIAL RECORDS.
PARCEL 7: (APN'S: 049-220-016, 049-220-020 AND 049-240-017)
ALL OF SECTIONS 24 AND 25, TOWNSHIP 8 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, MERCED COUNTY, CALIFORNIA.
THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED MAY 21, 2007, AS INSTRUMENT NO. 2007-29948 AND NOVEMBER 19, 2007, AS INSTRUMENT NO. 2007-62107 OF OFFICIAL RECORDS.
TOGETHER WITH:
ALL THAT PORTION OF SECTION 14, TOWNSHIP 8 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN, MERCED COUNTY, CALIFORNIA, EXCEPTING THEREFROM THE EAST 2562.34 FEET THAT LIES NORTHEAST OF THE CENTERLINE OF THE "EASTSIDE BYPASS".
THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED MAY 21, 2007, AS INSTRUMENT NO. 2007-29948 AND NOVEMBER 19, 2007, AS INSTRUMENT NO. 2007-62107 OF OFFICIAL RECORDS.
PARCEL 8: (APN: 065-030-004)
ALL THAT PORTION OF THE WEST HALF OF SECTION 19, TOWNSHIP 8 SOUTH, RANGE 12 EAST, M.D.B.&M., IN MERCED COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS, TO-WIT:
BEGINNING AT THE NORTHWEST CORNER OF SAID SECTION 19; THENCE NORTH 88°56' EAST ALONG THE NORTH LINE OF SAID SECTION 19, ALSO BEING THE SOUTH LINE OF THE GREEN HOUSE ROAD, 1283.74 FEET TO THE WESTERLY LINE OF THE-EAST SIDE CANAL RIGHT OF WAY; THENCE SOUTH 16°04'30" EAST ALONG SAID CANAL RIGHT OF WAY, 3987.87 FEET; THENCE SOUTH 81°27' WEST 2465.39 FEET TO A POINT ON THE WEST LINE OF SAID SECTION 19; THENCE NORTH 0°40' EAST ALONG SAID SECTION LINE 4174.69 FEET TO THE PLACE OF BEGINNING.
THIS LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED MAY 21, 2007, AS INSTRUMENT NO. 2007-29948 OF OFFICIAL RECORDS.
PARCEL 9: (APN'S: 049-220-015 AND 049-240-016)
ALL OF SECTION 23 AND ALL OF SECTION 26, TOWNSHIP 8 SOUTH, RANGE 11 EAST, MOUNT DIABLO BASE AND MERIDIAN.

T.S. No.: **19-13632-01**
Loan No.: **

## NOTICE OF TRUSTEE'S SALE

**EXCEPTING THEREFROM ALL MINERALS AND MINERAL RIGHTS OF EVERY KIND
AND NATURE INCLUDING OIL, GAS ASPHALTUM AND OTHER HYDROCARBON
SUBSTANCES, AS CONVEYED DECEMBER 21, 1988, IN VOLUME 2716 OFFICIAL
RECORDS PAGE 116.
NOTE: A NOTICE OF INTENT TO PRESERVE THE MINERAL INTEREST WAS
RECORDED APRIL 25,1995 IN VOLUME 3348 OF OFFICIAL RECORDS PAGE 535.**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may visit the Internet Web site address listed below for information regarding the sale of this property, using the file number assigned to this case file number. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: April 1, 2021                 WT Capital Lender Services, a California corporation
                                    7522 North Colonial Avenue, Suite 101
                                    Fresno, California 93711
                                    (559) 222-4644
                                    WTCap.com

                                    By _____
                                    **Debra Francesconi, Senior Vice President**

EXHIBIT "B"

This e-copy is the official court record (GC68150)

1  **WANGER JONES HELSLEY PC**
   265 E. River Park Circle, Suite 310
2  Fresno, CA  93720
   Telephone:  (559) 233-4800
3  Facsimile:  (559) 233-9330

4  Kurt F. Vote, # 160496
   kvote@wjhattorneys.com

5

6  Attorney for:     Plaintiff SANDTON CREDIT SOLUTIONS MASTER FUND IV, LP

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9                    **COUNTY OF MERCED**

10  SANDTON CREDIT SOLUTIONS MASTER          Case No.     21CV-00990
    FUND IV, LP
11                                            ~~[PROPOSED]~~ **ORDER GRANTING**
                                              ***EX PARTE* APPLICATION FOR**
12              Plaintiff,                    **APPOINTMENT OF RECEIVER**

13         v.                                 Ex Parte Hearing:

14  STEPHEN W. SLOAN, an individual; 4-S      Date:   April 2, 2021
    RANCH PARTNERS, LLC, a Delaware limited   Time:   1:15 p.m.
15  liability company; and DOES 1 through 25,  Dept:   8 (Judge McCabe)
    inclusive,
16                                            OSC re Confirmation:
17              Defendants.
                                              Date:   APR 1 6 2021
18                                            Time:   8:15 Am
                                              Dept:   8
19

20

21         The *Ex Parte* Application of Plaintiff SANDTON CREDIT SOLUTIONS MASTER

22  FUND IV, LP ("Plaintiff") for an Order appointing David Stapleton of The Stapleton Group as a

23  Receiver to take immediate possession of certain real property owned by Defendants STEPHEN W.

24  SLOAN, an individual ("Sloan") and 4-S RANCH PARTNERS, LLC, a Delaware limited liability

25  company ("4-S") (together with Sloan, the "Defendants) and to operate, manage, maintain, and

26  preserve the same as necessary with the proceeds collected and held pending further Order of this

27  Court, came on for hearing on April 2, 2021, at 1:15 p.m. in Department 8.  Kurt F. Vote appeared on

28  behalf of Plaintiff.  Other appearances, if any, were noted in the record.

{8643/002/01218966.DOCX}                    1

FILED
2021 APR -5  AM 7: 54
CLERK OF THE SUPERIOR COURT
BY _____

1       Having considered the *Ex Parte* Application of Plaintiff for an Order appointing a

2 Receiver, the Verified Complaint filed herein, and the other pleadings submitted by Plaintiff, the

3 Court, having waived an undertaking by Plaintiff pursuant to Code of Civil Procedure § 566(b) due to

4 Defendants' repeated written consent to the requested relief , the Court, having determined good cause

5 exists for the appointment of a Receiver, and David Stapleton of The Stapleton Group is qualified to

6 act as the Receiver in this case, makes the following Orders:

7       IT IS ORDERED that David Stapleton of The Stapleton Group shall be appointed

8 Receiver in this action.  Mr. Stapleton shall immediately, and before performing any duties, execute

9 and file a Receiver's oath and file the bond required by Code of Civil Procedure § 567(b) in the

10 amount of $ *15,000* Mr. Stapleton and The Stapleton Group shall be compensated for services

11 rendered as Receiver according to the rate schedule attached to his Declaration filed herein and

12 reimbursed costs as allowed by this Order or subsequent orders of this Court.

13       The Receivership Estate shall consist of the real property collateral secured by the

14 Deeds of Trust referenced in the Verified Complaint:

15       1.    Merced County Assessor's Parcel Numbers: 049-200-005, 049-200-020, 049-

16 200-022, 049-200-019, 049-200-023, 049-200-017, 049-200-021, 049-200-024, 049-220-018, 049-

17 200-025, 049-200-025, 049-220-019, 049-220-016, 049-220-020, 049-240-017, 065-030-004, 049-

18 220-015, and 049-240-016 (the "4-S Ranch"); and

19       2.    Merced County Assessor's Parcel Numbers: 088-190-018, 090-130-028, 090-

20 140-048, and 088-180-051 (the "Hamburg Ranch") (together with the 4-S Ranch, the "Property").

21       The Receiver is authorized and empowered and shall have and take possession of the

22 Property together with all receipts, rents, proceeds, royalties, issues, profits, revenue and income

23 thereof ("Proceeds" or "Rents and Profits"), to preserve, care for, control, and manage the same

24 pending further Order(s) of this Court.  The Receiver is not obligated to protect the Property from

25 being sold at any non-judicial foreclosure sale noticed by or on behalf of Plaintiff or the Trustee(s)

26 under the Deeds of Trust held by Plaintiff against the Property.

27 ///

28 ///

This copy is the official court record (GC68150)

{8643/002/01218966.DOCX}              2

This e-copy is the official court record (GC68150)

The Receiver is granted the following powers and duties:

1.　　To take possession of the Property, including any monies and funds on deposit in any and all banks, savings and loan associations and/or any financial institutions in the name of the Defendants, to the extent said accounts contain the Property or the rents, issues, income, profits, revenues or royalties generated by or arising out of the Property;

2.　　To operate, manage, maintain, and preserve the Property;

3.　　To bring, prosecute, defend, compromise, intervene, or become a party to such suits, actions or proceedings as may in his opinion be necessary for the protection, maintenance, operation, preservation, or enhancement of the receivership estate including (a) collection of Rents and Profits derived from the Property, (b) removal of Property from persons not entitled to same, (c) protection of the Property, (d) damage caused to the Property, (e) recovery of possession of the Property, and (f) exclusion or eviction of Defendants, or anyone claiming under or through Defendants therefrom who are not under valid leases or rental agreements to use, operate, manage and control the Property, from the Property as necessary to preserve the Property and conduct business operations, and to employ and retain counsel as may be necessary for such proceedings, and to pay reasonable value of services rendered out of funds of the receivership estate;

4.　　To execute and prepare all documents and to perform all acts, either in the name of the Defendants or in the Receiver's own name, which are necessary or incidental to preserving, protecting, managing and/or controlling the property of the receivership estate;

5.　　To hire, employ and retain attorneys, certified public accountants, investigators, security guards, consultants, locksmiths, computer system experts, agents, brokers, property managers, farm managers, farm labor contractors, pest control advisors, and any other personnel, consultants, or employees which the Receiver deems necessary to assist him in the discharge of his duties;

6.　　Within thirty (30) working days of qualifying for his office, to confirm the Property is adequately insured and in proper repair, to promptly report any evidence or findings to the contrary to the parties and to the Court and, if necessary, to disburse funds for the maintenance of fire, hazard, and liability insurance for the Property in amounts the Receiver may deem fit or proper and to cause all presently existing or acquired policies to be amended by adding himself, the receivership

This e-copy is the official court record (GC68150)

estate, and any property manager retained by the Receiver as additional insureds. The Receiver shall be entitled to use any insurance proceeds to repair the Property and any surplus for ordinary and necessary Property expenses;

7.　　　To take possession of all the books and records, ledgers, financial statements, financial reports and all other business records of Defendants, including but not limited to, information contained on computers relating thereto, pertaining to the Property, wherever located, as the Receiver deems necessary for the proper administration, management and/or control of the receivership estate, but said books and records shall be made available to Defendants, their counsel, agents, servants, employees, or representatives, and all persons or entities acting under or in concert with Defendants as is reasonably necessary in the ordinary course of the performance of their duties;

8.　　　In sole and absolute exercise of his business judgment, to continue in effect any contracts presently existing and not in default relating to the Property;

9.　　　In sole and absolute exercise of his business judgment, to negotiate, make, enter into or modify contracts affecting any part or all of the Property, and to immediately terminate any existing contract which is not deemed beneficial to the prudent operation of the Property;

10.　　To pay and discharge out of the funds coming into his hands all the expenses of the receivership and the costs and expenses of operation and maintenance of the Property incurred since the time of the Receiver's appointment, including all taxes, governmental assessments, and charges in the nature thereof lawfully imposed upon the Property. Additionally, the Receiver may, in his sole discretion, pay other costs and expenses incurred prior to the Receiver's appointment if payment of such items is necessary for the preservation, care, and maintenance of the Property; however, the Receiver may not expend more than Twenty-Five Thousand Dollars ($25,000.00 US) on any capital expenditures without the Plaintiff's approval and Order of the Court;

11.　　To do all things and incur all risks and obligations ordinarily and reasonably incurred by owners or operators of similar Property exercising reasonable business judgment; and no risk or obligation so incurred shall be at the personal risk or obligation of the Receiver, but shall be a risk or obligation solely of the receivership estate;

This e-copy is the official court record (GC68150)

12. To have the power to advance funds to keep current any liens encumbering the Property which are determined to be senior to the liens created under the Deeds of Trust and UCC-1 Financing Statements;

13. To expend funds to purchase such merchandise, materials, supplies, and services as the Receiver deems necessary and advisable to assist him in performing his duties hereunder and to pay therefore the ordinary and usual rates and prices out of the funds that may come into the possession of the Receiver;

14. To apply for, obtain, and pay any reasonable fees for any lawful license, permit, or other governmental approval relating to the Property or the operation thereof; confirm the existence of and, to the extent permitted by law, exercise the privileges of any existing license or permit or the operation thereof, and do all things necessary to protect and maintain such licenses, permits, and approvals;

15. Upon written notice to all Parties, to borrow funds from Plaintiff, or any other appropriate bank, financial institution, or lender as may be necessary to satisfy the costs and expenses of the receivership as authorized herein; to issue a Receiver's Certificate of Indebtedness evidencing the obligation of the receivership estate (and not the Receiver individually) to repay such sums with the principal sum of each such Certificate, together with reasonable interest thereon payable with the highest legal priority from the Rents and Profits derived from the Property, to the extent available.

16. To present for payment any checks, money orders, and other forms of payment made payable to Defendants named herein, or any of their officers, directors, shareholders, affiliated companies, partners, beneficiaries, agents, attorneys, property managers, consultants, representatives, or employees, which constitute the Property and/or Rents and Profits of the Property, endorse same and collect the proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein; and

17. All monies coming into possession of the Receiver and not expended for any purpose herein authorized shall be held by the Receiver subject to further Order of this Court. The Receiver is empowered to establish accounts at such banks or financial institutions, the accounts of which are insured by the Federal Deposit Insurance Corporation, as he reasonably deems proper, and

This e-copy is the official court record (GC68150)

1    to deposit monies coming into his possession into such accounts; in this regard, the Receiver may use

2    the federal taxpayer identification numbers of Defendants to open such bank account and for any other

3    lawful purpose.

4           18.    To open all mail addressed to Defendants, their agents, servants, employees or

5    representatives, or any persons or entities acting under or in concert with Defendants. The Receiver is

6    authorized to keep or make copies of any mail pertaining to the Property and/or administration of the

7    receivership estate, then to forward the original or copy of the mail, as appropriate, to the Defendants

8    at the address provided by the Defendants.

9           19.    To apply to this Court for further or other instructions or orders and for further

10   powers necessary to enable the Receiver to perform the Receiver's duties properly.

11          20.    The Receiver, in the exercise of his reasonable discretion and business

12   judgment, may notify local, state, and federal governmental agencies, all vendors and suppliers, and

13   any and all others who provide goods or services to the receivership estate, including the Internal

14   Revenue Service, of his appointment as Receiver. No utility may terminate service in connection with

15   the Property as a result of non-payment of pre-receivership obligations without prior Order of this

16   Court, including gas, electric, water, sewer, trash collection, telephone, communications, internet

17   service providers, television, cable, or similar services. Further, such utilities shall transfer any

18   deposits held by said utilities to the exclusive control of the Receiver and shall be prohibited from

19   demanding that the Receiver deposit additional funds in advance to maintain or secure such services.

20   Utility providers are prohibited from discontinuing services while the new Receivership accounts are

21   in the process of being established.

22          21.    The Receiver shall, within thirty (30) days of his qualification hereunder, file in

23   this action an inventory of all Property in conformance with Rule of Court 3.1181(a) of which he shall

24   have taken possession pursuant hereto, including without limitation, a complete inventory of all

25   furniture, fixtures, equipment, and personal property, used in connection with the maintenance and

26   operation of the Property.

27          22.    The Receiver shall prepare and render to the parties a monthly accounting of the

28   income and expenses incurred in the administration of the receivership estate, including a statement of

{8643/002/01218966.DOCX}          6

This e-copy is the official court record (GC68150)

1  Receiver's fees and expenses.  Upon completion of such interim statements and mailing said
2  statements to the parties' respective attorneys of record, or if they have no attorney of record then to
3  the parties themselves, the Receiver may pay from the Property's funds, if any, the fees and costs set
4  forth in said statement.  Despite the periodic payment of Receiver's fees and administrative expenses,
5  said fees and expenses shall eventually be submitted to the Court for their approval and confirmation
6  in the form of either a noticed interim request for fees, a stipulation among the parties, or the
7  Receiver's Final Account and Report.

8       23.    All income tax reporting and payments, whether for periods prior to, or during
9  the term of this receivership, shall remain the obligation of the owner of the Property which is
10  generating income, rents, and profits administered by the Receiver in this proceeding, including
11  without limitation, interest earned by such income and profits while in the possession of the Receiver.
12  In any event, the Receiver shall not be required to report any income generated by the Property, or to
13  pay any income taxes thereon, nor shall the Receiver bear any liability for failure of the owner of the
14  Property to report such income to taxing authorities or to pay any taxes associated with such income.
15  The Receiver shall have no responsibility for filing federal and state income tax returns or federal or
16  state payroll tax returns and shall not be responsible for paying any unpaid federal and state payroll
17  taxes and expenses of the Borrower.  The responsibility for such filings and payments lie exclusively
18  with the Defendants and their agents, servants, employees and representatives.

19      IT IS FURTHER ORDERED the Defendants and their agents, servants and employees,
20  and all those acting in concert with them, and each of them, are restrained and enjoined from engaging
21  in or performing, directly or indirectly, any of the following acts:

22      1.    Demanding, collecting, receiving, or in any other way diverting or using any of
23  the profits, income, issues, rents, or lease payments emanating from the real or personal property
24  subject to the receivership including, without limitation, rents or lease payments due or hereafter to
25  become due under any rental or lease agreements;

26      2.    Interfering with or hindering, in any way whatsoever, the Receiver in the
27  performance of the Receiver's duties herein described and in the performance of any duties incidental
28  thereto;

This e-copy is the official court record (GC68150)

3.      Interfering in any manner with the use, enjoyment, or operation of the real or personal property subject to the receivership;

4.      Transferring, concealing, destroying, defacing, or altering any of the instruments, documents, ledger cards, books, records, printouts, or other writings relating to the real or personal property subject to the receivership, or any portion thereof; and

5.      Transferring, conveying, assigning, pledging, deeding, selling, renting, leasing, encumbering, changing ownership, vesting of title to, or otherwise disposing of the real or personal property subject to the receivership or any portion thereof.

Further, within two (2) days of entry of this Order, Defendants and their agents, servants and employees, and all those acting in concert with them, and each of them, shall:

1.      Turn over to the Receiver the possession of the Property and the records, books of account, ledgers, current rent roles, including statements and records of security deposits, advances and prepaid rent, and all business records, scientific data, consultant investigations or reports, test results, or other documents relating to the Property, wherever located and in whatever mode maintained (including without limitation, information contained on computers and any and all software relating thereto as well as all banking records, statements, and canceled checks);

2.      Turn over to the Receiver all usernames, passwords, security questions and answers, tokens, or other data or information necessary to access and operate all computer systems and networks (including, but not limited to, QuickBooks) related to the Property;

3.      Turn over to the Receiver all documents which constitute or pertain to all licenses, permits, or governmental approvals relating to the Property;

4.      Turn over to the Receiver all documents which constitute or pertain to insurance policies, whether currently in effect or lapsed, which relate to the Property;

5.      Turn over to the Receiver all agreements of any kind whatsoever, whether currently in effect or lapsed, which relate to any part or all of the Property;

6.      Turn over to the Receiver all documents of any kind pertaining to any and all toxic chemical or hazardous materials, if any ever brought, used, and/or remaining on the Property,

*** ORDER GRANTING *EX PARTE* APPLICATION
FOR APPOINTMENT OF RECEIVER***

This e-copy is the official court record (GC68150)

1  including without limitation, all reports, surveys, inspections, checklists, proposals, orders, citations,

2  fines, warnings, and notices;

3         7.    Turn over to the Receiver the federal taxpayer identification numbers for the

4  Defendants, as well as all tax assessments, bills, liens, and notices of delinquency, interest, and

5  penalties thereon;

6         8.    Turn over to the Receiver all accounting records relating to the Property for the

7  last twelve (12) months; and

8         9.    Turn over to the Receiver all keys to the Property and the keys and/or

9  combinations for all locks on the Property.

10      The Receiver may, at any time, apply to this Court, either by noticed motion or *ex parte*

11  application, for any further or other instructions and powers necessary to enable the Receiver to

12  perform his duties properly.

13      Pursuant to Rule of Court 3.1776, the Court hereby issues an Order to Show Cause to

14  the Defendants for them to show good cause, if any they may have, why the Court's *Ex Parte*

15  appointment of the Receiver, as set forth herein, should not be confirmed. The Order to Show Cause

16  shall be heard on:

17      Date: _April 16, 2021_

18      Time: _8:15 AM_

19      Dept: _8_

20      This Order, along with copies of all of Plaintiff's moving papers, shall be served by

21  Plaintiff on Defendants in the manner permitted by law as soon as reasonably possible.

22      IT IS SO ORDERED.

23

24  Dated:   **APR - 5 2021**

25

26             Hon. Brian L. McCabe

27             Judge of the Superior Court

28

*** ORDER GRANTING *EX PARTE* APPLICATION
FOR APPOINTMENT OF RECEIVER***

<div style="text-align:center; color:#2e74b5;">PROOF OF SERVICE</div>

My business address is 265 East River Park Circle, Suite 310, Post Office Box 28340, Fresno, California 93729.  I am employed in Fresno County, California.  I am over the age of 18 years and am not a party to this case.

On the date indicated below, I served the following document(s) described as:

- **CREDITOR'S STATUS CONFERENCE REPORT**

on all interested parties in this action as follows:

_____       (BY MAIL)       I am readily familiar with the business' practice for collection and processing of correspondence for mailing, and that correspondence, with postage thereon fully prepaid, will be deposited with the United States Postal Service on the date noted below in the ordinary course of business, at Fresno, California.

\_X\_\_       (FRBP 9036 SERVICE)       The above-described documents have been filed with the court's electronic filing system. Pursuant to FRBP 9036, service of the documents upon all registered users who have appeared in this case was complete upon the filing of the documents.

\_X\_\_\_\_       (FEDERAL)       I declare I am employed in the office of a member of the bar of this court at whose direction this service was made.

Executed on April 5, 2021, at Fresno, California.

_____/s/ Kimberley Dodd_____
Kimberley Dodd